```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                        EL DORADO DIVISION
```

**THE CITY OF STAMPS, ARKANSAS**                                    PLAINTIFF

            v.             Civil No. 05-1049

**ALCOA, INC.; ALUMAX ALUMINUM
CORPORATION; ALUMAX, INC.;
ATLANTIC COAST RECYCLING, INC.;
COMMERCIAL ALLOYS CORPORATION;
METAL EXCHANGE CORPORATION;
SERVICE ALUMINUM CORPORATION;
WABASH ALLOYS, L.L.C.; COMMERCIAL
METALS COMPANY; L & S METALS AND
PROCESSING, INC.; NEWCO METALS, INC.;
OMNISOURCE CORPORATION; REYNOLDS
METALS COMPANY a/k/a REYNOLDS
ALUMINUM RECYCLING COMPANY;
SHAPIRO SALES COMPANY; TENNESSEE
ALUMINUM PROCESSORS, INC.; and
TEXAS SCRAP & SALVAGE, INC. d/b/a
DELTA ALUMINUM PROCESSORS**                                        DEFENDANTS

## O R D E R

Now on this 3rd day of April, 2006, come on for consideration the following motions:

   *   **Defendants Tennessee Aluminum Processors, Inc. And L&S Metals Processing, Inc.'s Motion To Dismiss** (document #76);

   *   **Motion Of Alcoa, Inc., Alumax Inc., Alumax Aluminum Corporation, And Reynolds Metals Company, a/k/a Reynolds Aluminum Recycling Company To Dismiss Count Five Of Plaintiff's Amended Complaint** (document #78);

* **Defendant Omnisource Corporation's Joinder In Motion Of Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company, a/k/a Reynolds Aluminum Recycling Company To Dismiss Count Five Of Plaintiff's Amended Complaint** (document #87);
* **Wabash Alloys, L.L.C.'s Motion To Dismiss Count Five Of Plaintiff's Amended Complaint** (document #88);
* **Metal Exchange Corporation's Motion To Dismiss Count V Of Plaintiff's First Amended Complaint** (document #94);
* **Separate Defendant Texas Scrap & Salvage, Inc. d/b/a Delta Aluminum Processors' Motion To Dismiss Count V Of Plaintiff's First Amended Complaint** (document #97);
* **Separate Defendant Service Aluminum Corporation's Joinder In Motion Of Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company, a/k/a Reynolds Aluminum Recycling Company To Dismiss Count Five Of Plaintiff's Amended Complaint** (document #98);
* **Commercial Alloys Corporation's Joinder In The Motion To Dismiss Count V Of Plaintiff's First Amended Complaint And Memorandum In Support Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #109);

* **Defendant Atlantic Coast Recycling, Inc.'s Joinder In The Motion To Dismiss Count V Of Plaintiff's First Amended Complaint, The Memorandum In Support And The Reply Memorandum To Plaintiff's Response Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #112); and

* **Motion Of Commercial Metals Company For Judgment On The Pleadings As To Count V Of The Complaint** (document #120);

and from said motions, the responses thereto, and the arguments of counsel made during a hearing on February 23, 2006, the Court finds and orders as follows:

1. This case arose out of the operation, from 1987 to 1998, of a secondary aluminum smelting facility known as Red River Aluminum ("RRA") in Lafayette County, near the City of Stamps, Arkansas ("Stamps"). RRA reprocessed scrap and byproducts from primary aluminum processing operations in order to reclaim usable aluminum. The secondary aluminum smelting process created a waste product known as "salt cake." RRA is alleged to have illegally dumped the salt cake on its property, and the runoff and blowoff therefrom is alleged to have contaminated neighboring land and water.

Stamps alleges that defendants Tennessee Aluminum Processors, Inc. and L&S Metals and Processing, Inc., operated

RRA, and that the other defendants contracted with RRA to reprocess their scrap aluminum. The defendants thus fall into two groups, which the Court will refer to for convenience as the Operating Defendants and the Contracting Defendants.

Stamps seeks remediation, civil penalties under the **Arkansas Solid Waste Management Act** and the **Resource Conservation and Recovery Act, ("RCRA")**; punitive damages; costs and attorney's fees.

2.  The Operating Defendants, Tennessee Aluminum Processors, Inc. and L&S Metals Processing, Inc., now move for dismissal of the claims against them, contending that those claims should be dismissed pursuant to **F.R.C.P. 12(b)(7)**, for failure to join necessary parties. They allege that the Arkansas Department of Environmental Quality ("ADEQ") and the Arkansas Commissioner of State Lands ("ACSL") are necessary parties because ACSL owns RRA and ADEQ controls it, and that these entities were included in plaintiff's initial Complaint in this matter, at which time plaintiff classified them as necessary parties. They also allege that Arkansas Aluminum Alloys ("AAA") is a necessary party, because in a previous state-court version of this suit, they were made a defendant on allegations that they contracted with RRA to reprocess their scrap aluminum.

**F.R.C.P. 19** governs this issue. It provides, in relevant part,

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
>
> If such a person cannot be joined,
>
> the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Stamps responded to this motion with affidavits showing that ACSL and ADEQ have given Stamps full access to the RRA site and have the same interest as does Stamps in cleaning up the site. It therefore has no quarrel with ACSL or ADEQ, and the Court finds that those entities are not necessary parties.

Nor is AAA a necessary party. The focus of **Rule 19** is "on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." **LLC**

**Corp. v. Pension Benefit Guaranty Corp.**, **703 F.2d 301 (8th Cir. 1983)**. Stamps can get complete relief on its claims against the present defendants even if AAA is not in the lawsuit, and AAA does not appear to be claiming any interest in the suit (as it might if it were a putative plaintiff rather than an erstwhile defendant). It is not necessary to join all tortfeasors in a single lawsuit - they are merely permissive parties. **Temple v. Synthes Corp.**, **498 U.S. 5 (1990).**

For these reasons, the Court finds that the Operating Defendants' Motion To Dismiss should be denied.

3. The Contracting Defendants move for dismissal of Count V of the First Amended Complaint, the **RCRA** claim, pursuant to **F.R.C.P. 12(b)(6),** for failure to state a claim upon which relief can be granted. They contend that the First Amended Complaint does not allege sufficient facts to support the **RCRA** claim, because:

* it does not allege that they were generators or transporters of salt cake;
* it does not allege that they contributed to the handling or storage of salt cake; and
* it does not allege that salt cake poses an "imminent and substantial" threat to health or the environment.

These defendants reason that they only generated and transported aluminum scrap and dross[1]. The salt cake was produced by RRA from the flux used in the reclamation process. RRA owned the flux, although the Contracting Defendants continued to own their aluminum as it went through the reclamation process. They claim they had no control over how RRA handled the reclamation process. Thus, the waste product, salt cake, and its disposal, must be entirely RRA's responsibility.

Stamps contends that the Contracting Defendants transported solid waste (scrap and dross), and contributed to the handling and storage of the salt cake because they knew that the production of salt cake was inherent in the reclamation process and knew or should have known that RRA was mishandling the disposal of the salt cake. They further contend that they have sufficiently pled the threat of harm from salt cake.

4. The applicable standard on a motion to dismiss for failure to state a claim is well settled:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which

---

[1] One definition for this term, from Webster's Third New International Dictionary, is "waste or foreign matter mixed with a substance or left as a residue after that substance has been used or processed."

-7-

a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

**Krentz v. Robertson Fire Protection District, 228 F.3d 897 (8th Cir. 2000)** (internal citations and quotation marks omitted).

5. **RCRA** provides, in relevant part, that

> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf . . . (B) against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. . . .

**42 U.S.C. §6972(a).**

"Solid waste," as defined in **42 U.S.C. §6903(27),** includes "discarded material . . . resulting from industrial, commercial, mining, and agricultural operations."

"Disposal" includes the "placing of any solid waste . . . into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharge into any waters. . . ." **42 U.S.C. §6903(3).**

6. The allegations as against the Contracting Defendants are as follows:

* that each defendant entered a "tolling agreement" whereby RRA reclaimed aluminum from materials owned by

>           that defendant, although title to the materials was
>           never transferred to RRA;
> *         that each defendant arranged and paid for the transport
>           of its materials to and from RRA;
> *         that those materials included dross and scrap metal;
> *         that each defendant was aware of RRA's reclamation
>           process, and knew it produced salt cake;
> *         that each defendant knew salt cake could harm the
>           environment; and
> *         that each defendant knew or should have known RRA was
>           not handling the salt cake properly, did not have the
>           resources or the skill or the proper permits to do so,
>           and that the salt cake was escaping into the
>           environment.

7.  The Court finds that these allegations state a viable claim under **RCRA**, even without an allegation that the product transported by the Contracting Defendants was salt cake. **Section 6972(a)(1)(B)** authorizes suit against "any person . . . including" generators and transporters, who has "contributed to" storage or handling of solid waste present endangerment. A list "including" certain categories is ordinarily held to be part of a larger group, not all of which are listed, *cf.* **P.C. Pfeiffer Co., Inc. v. Ford, 444 U.S. 69, n.7 (1979),** and the Court finds this principle of statutory construction especially applicable where a statute is

to be given liberal construction.  Thus there does not appear to be a requirement that a potentially-liable party have been a generator or transporter of the particular solid waste said to be threatening harm.

The First Amended Complaint sufficiently alleges that the Contracting Defendants generated solid waste as defined by **RCRA** (that portion of their scrap and dross which was unreclaimable), and transported it to RRA along with the reclaimable portion, to be reprocessed so that the reclaimable portion could be returned to them and the unreclaimable portion disposed of by RRA.

It also sufficiently alleges that the Contracting Defendants contributed to the handling and storage of solid waste which presents endangerment, because it alleges that they knew the process by which the reclaimable portion of their scrap and dross was separated from the unreclaimable portion would produce a byproduct harmful to the environment, and knew that RRA was not properly disposing of that waste to prevent such harm.

The Court is guided in this decision by **U.S. v. Aceto Agricultural Chemicals Corp.**, **872 F.2d 1373 (8th Cir. 1989)**, wherein defendants contracted with an outside company to formulate their pesticides from technical grade to commercial grade, but retained ownership of the pesticides and supplied specifications for the process.  Production of wastes was inherent in the process.  The Eighth Circuit found that "it may reasonably be

inferred that [defendants] had authority to control the way in which the pesticides were formulated, as well as any waste disposal."

In the case at bar, the allegation that the Contracting Defendants knew of the inherent problems with the reclamation process and with the waste disposal (both that waste was created and that RRA was not properly disposing of it), yet paid RRA to perform the process anyway, suffices for the "authority to control" element of **Aceto**. The Contracting Defendants could have chosen some other method of disposing of their solid waste.

In **Aceto,** the court recognized that the phrase "contributed to" as used in **RCRA** should be given a broad, rather than a narrow, construction, in keeping with the liberal construction to be afforded this remedial statute. It noted that the "plain meaning" of "contributing to" is "to have a share in any act or effect." The Court believes an appropriately broad reading of **RCRA** leads to the conclusion that Stamps has sufficiently alleged that the Contracting Defendants contributed to the handling and storage of the salt cake. While the Court takes no position on whether the Contracting Defendants actually did what is alleged in the Amended Complaint, it believes that if the allegations were proven, they would constitute a violation of **RCRA**, in the form of essentially "handing off" problems inherent in solid waste disposal and turning a blind eye to mishandling of such disposal. Cf. **Cox v.**

**City of Dallas, Texas**, 256 F.3d 281 (5th Cir. 2001)("lax oversight" of contractors' waste disposal methods led to "contributing to" liability under RCRA).

8. The Court also finds that the First Amended Complaint sufficiently alleges that the salt cake presents an imminent and substantial endangerment to health or the environment. Stamps alleges that there are over 70,000 cubic yards of salt cake and related waste on the site. They allege that this waste contains chlorides, which were not remediated by an EPA clean-up, and that runoff has killed nearby vegetation, polluted nearby surface streams, percolated downward causing groundwater contamination, and blown unhealthy particulate off-site. These are sufficient allegations under **RCRA.**

9. For the foregoing reasons, the Court finds that the motions to dismiss by the Contracting Defendants should be denied.

**IT IS THEREFORE ORDERED** that **Defendants Tennessee Aluminum Processors, Inc. And L&S Metals Processing, Inc.'s Motion To Dismiss** (document #76) is **denied.**

**IT IS FURTHER ORDERED** that the **Motion Of Alcoa, Inc., Alumax Inc., Alumax Aluminum Corporation, And Reynolds Metals Company, a/k/a Reynolds Aluminum Recycling Company To Dismiss Count Five Of Plaintiff's Amended Complaint** (document #78) is **denied.**

**IT IS FURTHER ORDERED** that **Defendant Omnisource Corporation's Joinder In Motion Of Alcoa, Inc., Alumax, Inc., Alumax Aluminum**

**Corporation And Reynolds Metals Company, a/k/a Reynolds Aluminum Recycling Company To Dismiss Count Five Of Plaintiff's Amended Complaint** (document #87) is **denied**.

**IT IS FURTHER ORDERED** that **Wabash Alloys, L.L.C.'s Motion To Dismiss Count Five Of Plaintiff's Amended Complaint** (document #88) is **denied**.

**IT IS FURTHER ORDERED** that **Metal Exchange Corporation's Motion To Dismiss Count V Of Plaintiff's First Amended Complaint** (document #94) is **denied**.

**IT IS FURTHER ORDERED** that **Separate Defendant Texas Scrap & Salvage, Inc. d/b/a Delta Aluminum Processors' Motion To Dismiss Count V Of Plaintiff's First Amended Complaint** (document #97) is **denied**.

**IT IS FURTHER ORDERED** that **Separate Defendant Service Aluminum Corporation's Joinder In Motion Of Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company, a/k/a Reynolds Aluminum Recycling Company To Dismiss Count Five Of Plaintiff's Amended Complaint** (document #98) is **denied**.

**IT IS FURTHER ORDERED** that **Commercial Alloys Corporation's Joinder In The Motion To Dismiss Count V Of Plaintiff's First Amended Complaint And Memorandum In Support Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #109) is **denied**.

**IT IS FURTHER ORDERED** that **Defendant Atlantic Coast Recycling, Inc.'s Joinder In The Motion To Dismiss Count V Of Plaintiff's First Amended Complaint, The Memorandum In Support And The Reply Memorandum To Plaintiff's Response Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #112) is **denied**.

**IT IS FURTHER ORDERED** that the **Motion Of Commercial Metals Company For Judgment On The Pleadings As To Count V Of The Complaint** (document #120) is **denied**.

**IT IS SO ORDERED.**

                                          **/s/Jimm Larry Hendren**
                                          **JIMM LARRY HENDREN**
                                          **UNITED STATES DISTRICT JUDGE**