IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

THE CITY OF STAMPS, ARKANSAS                                    PLAINTIFF

            v.                    Civil No. 05-1049

ALCOA, INC.; ALUMAX ALUMINUM
CORPORATION; ALUMAX, INC.;
ARKANSAS ALUMINUM ALLOYS;
ATLANTIC COAST RECYCLING, INC.;
COMMERCIAL ALLOYS CORPORATION;
METAL EXCHANGE CORPORATION;
SERVICE ALUMINUM CORPORATION;
WABASH ALLOYS, L.L.C.; COMMERCIAL
METALS COMPANY; L & S METALS AND
PROCESSING, INC.; NEWCO METALS, INC.;
OMNISOURCE CORPORATION; REYNOLDS
METALS COMPANY a/k/a REYNOLDS
ALUMINUM RECYCLING COMPANY;
SHAPIRO SALES COMPANY; TENNESSEE
ALUMINUM PROCESSORS, INC.; and
TEXAS SCRAP & SALVAGE, INC. d/b/a
DELTA ALUMINUM PROCESSORS                                      DEFENDANTS

                            O R D E R

       On the 1st day of August, 2006, the following motions came on
for hearing:

       *    **Alcoa Defendants' Joint Motion For Summary Judgment**
            (document #162);

       *    **Joinder Of Defendant Wabash Alloys, L.L.C., In Alcoa
            Defendants' Joint Motion For Summary Judgment** (document
            #165);

       *    **Joinder Of Defendant Texas Scrap & Salvage, Inc. d/b/a
            Delta Aluminum Processors In Alcoa Defendants' Joint
            Motion For Summary Judgment** (document #166);

* **Joinder Of Commercial Alloys Corporation In The Motion For Summary Judgment Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #167);

* **Joinder Of Defendant Omnisource Corporation In Alcoa Defendants' Joint Motion For Summary Judgment** (document #168);

* **Joinder Of Defendants Tennessee Aluminum Processors, Inc. And L&S Metals And Processing, Inc. In Alcoa Defendants' Joint Motion For Summary Judgment** (document #169);

* **Joinder Of Newco, Inc., In The Motion For Summary Judgment Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #171);

* **Separate Defendant Arkansas Aluminum Alloys' Motion To Dismiss Plaintiff's Second Amended And Supplemented Complaint, Or In The Alternative, Motion For Summary Judgment, And Joinder Of Arkansas Aluminum Alloys In Alcoa Defendants' Joint Motion For Summary Judgment** (document #172);

* **Joinder Of Service Aluminum Corporation In The Motion For Summary Judgment Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company**

(document #174);

* **Joinder Of Defendant Atlantic Coast Recycling, Inc. In Alcoa Defendants' Joint Motion For Summary Judgment** (document #175);

* **Shapiro Sales Company's Motion For Summary Judgment** (document #177);

* **Metal Exchange Corporation's Motion For Summary Judgment And Joinder In The Motions For Summary Judgment Filed By The Alcoa Defendants And Arkansas Aluminum Alloys** (document #181);

* **Metal Exchange Corporation's Joinder In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #183);

* **Plaintiff City Of Stamps' Motion For Partial Summary Judgment** (document #184);

* **Joinder Of Commercial Metals Company In The Motion For Summary Judgment Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #190);

* **Joinder Of Service Aluminum Corporation In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #191);

* **Joinder Of Arkansas Aluminum Alloys In The Motion For**

**Summary Judgment Filed By Shapiro Sales Company** (document #192);

\* **Joinder Of Commercial Metals Company In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #193);

\* **Joinder Of Commercial Alloys Corporation In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #194);

\* **Joinder Of Tennessee Aluminum Processors, Inc. And L&S Metals And Processing, Inc. In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #195);

\* **Joinder Of Newco, Inc., In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #196);

\* **Joinder Of Defendant Omnisource Corporation In Shapiro Sales Company's Joint Motion For Summary Judgment** (document #197);

\* **Joinder Of Texas Scrap & Salvage, Inc., In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #198); and

\* **Joinder Of Defendant Atlantic Coast Recycling, Inc. In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #204);

and from said motions, the responses thereto, the supporting documentation, and the arguments of counsel, the Court finds and orders as follows:

## 1. **Background**:

This case involves claims under the "citizen suit" provisions of the Resource Conservation and Recovery Act ("RCRA"), **42 U.S.C. §6972**; the "private right of action" provision of the Arkansas Solid Waste Management Act ("ASWMA"), **A.C.A. §8-6-201 et seq**. ("ASWMA"); and the Arkansas common law torts of nuisance, trespass, and negligence. Plaintiff, the City of Stamps, Arkansas ("Stamps" or the "City"), seeks an injunction requiring the defendants to remediate alleged environmental contamination from an industrial site adjacent to its city limits, or, alternatively, compensatory damages sufficient to allow it to conduct the remediation. It also seeks attorney's fees and costs and punitive damages.[1]

All defendants now move for summary judgment, and the plaintiff moves for partial summary judgment. The issues are fully briefed, and oral argument was presented to the Court on August 1, 2006.

## 2. **Summary Judgment Standard**:

Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that

---

[1]Stamps also prayed for civil penalties under both RCRA and AWSMA, but acknowledged at oral argument that it was not entitled to make such a claim and stated that those claims would be dismissed. The Court, therefore, takes no action with regard to them in this Order.

party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States, 31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995).** The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).**

3. **Undisputed Facts**:

Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

* Red River Aluminum ("RRA") operated a secondary aluminum processing facility (the "Site") in Lafayette County, Arkansas, adjacent to Stamps. RRA processed aluminum dross (a by-product of primary aluminum processing), used beverage containers, aluminum scrap, and other materials containing aluminum, in order to recover their aluminum

-6-

content.

* The secondary processing method used by RRA left behind
  a by-product known as salt cake, which consists mostly
  of aluminum oxides, chlorides (salts), and non-reclaimed
  aluminum.

* Each of the defendants contracted with RRA to reprocess
  aluminum-containing materials. While there were
  variations in the arrangements between RRA and the
  various contracting defendants, the essence of the
  transactions was the same: RRA would - for a price -
  reprocess the materials of a particular defendant and
  return to that defendant the recovered aluminum, while
  the salt cake left over from the reprocessing remained
  at the RRA Site.

* During the time that it was operational, RRA accumulated
  a large amount of salt cake at the Site, estimated at
  some 80,000 cubic yards.

* Salt cake, if not properly managed, can contaminate storm
  water, surface water, ground water, soil and air.

* In 1990, the Arkansas Department of Environmental Quality
  ("ADEQ") began receiving complaints about contaminated
  run-off from the RRA salt cake piles onto neighboring
  properties.

* During the 1990's, ADEQ observed and notified RRA of

various instances of environmental non-compliance, including chloride-contaminated run-off affecting ground water and adjacent properties, and failure to properly dispose of accumulated salt cake.

* In November, 1998, RRA ceased operations and filed for bankruptcy, leaving behind its accumulated piles of salt cake.

* In November, 2000, the United States Environmental Protection Agency ("EPA"), working with ADEQ, began to formulate a plan to remediate the RRA Site. ADEQ recommended that the salt cake be removed to a permitted landfill with both synthetic and clay liners, and a leachate collection system. The plan as put into effect, however, involved consolidation of the salt cake into a pile at the Site, leveling the pile, capping it with clay, then covering the clay with topsoil and planting grass. In addition, houses on the east side of the Site and within the city limits of Stamps were razed and their occupants were relocated. The EPA took no action to remediate ground water contamination, and left waste materials exposed on the surface of the Site.

* The EPA remediation was finished in October, 2001.

* Since October, 2001, ADEQ, has maintained and monitored the Site.

\*     The State of Arkansas, in care of the Land Commissioner, is the present owner of the Site.

**4.   Summary of Defendants' Arguments:**

Defendants' arguments that summary judgment should be granted in their favor may be grouped and summarized as follows:

(a)   Stamps lacks standing;

(b)   the Court has no jurisdiction over the state law claims;

(c)   all claims are barred by laches or the applicable statutes of limitations;

(d)   the Court should abstain based on the doctrine of "primary jurisdiction"; and

(e)   Stamps cannot prevail on the merits of its claims.

**5.   Does Stamps Have Standing to Pursue Its RCRA Claim?**

The Court will first take up the contention that Stamps lacks standing to bring the RCRA claim, inasmuch as, there being incomplete diversity, the Court's subject-matter jurisdiction over the entire case depends upon Stamps having standing to bring that claim.  **Faibisch v. University of Minnesota, 304 F.3d 797 (8th Cir. 2002).**

Defendants couch their standing argument in terms of the *proof* that Stamps can offer, but the Court will analyze the issue in terms of the *allegations* of the Second Amended Complaint.  That is because "[s]tanding doctrines are employed to refuse to determine the merits of a legal claim, on the ground that even though the

claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination." **Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction 2d</u>, §3530.** It is only if a plaintiff has made sufficient allegations to justify a finding that it has standing to pursue its claims that the Court need analyze whether it can come forward with sufficient proof to withstand summary judgment on the merits of those claims.

The Supreme Court has outlined the requirements of standing as follows:

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical'." Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

<u>**Lujan v. Defenders of Wildlife**</u>, **504 U.S. 555, 560-61 (1992)** (internal citations omitted). The Court will examine each of these requirements in turn.

(a) <u>**Has Stamps pled an injury which is concrete, particularized, and imminent**</u>?

Defendants contend that Stamps does not allege that it has suffered an injury *in fact* sufficient to support standing, in that

its pleadings are couched mainly in terms of the *threat* of harm. It is not accurate, however, to say that an allegation of threat of harm will never suffice to establish standing.

The Supreme Court held, in **Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.**, **528 U.S. 167 (2000)**, that standing requires no greater allegation of injury than is required for success on the merits of a claim. The type of injury which will support a citizen's suit under RCRA is outlined in **42 U.S.C. §6972(a)**, which specifies, in relevant part, that

> [e]xcept as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf . . . (B) against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. . . .

It can be seen that the type of injury that must be shown to succeed on the merits of a RCRA claim is a threat of harm: "imminent . . . endangerment."

In **Meghrig v. KFC Western, Inc.**, **516 U.S. 479 (1996)**, the Supreme Court explained that "this language 'implies that there must be a threat which is present *now*, although the impact of the threat may not be felt until later.' It follows that §6972(a) was designed to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms . . . ." **516 U.S. at 486**

(citation omitted; emphasis in original).

From the foregoing it can be seen that presently existing actual injury is not required for recovery under RCRA. It is sufficient if there is a presently existing threat of harm that will be experienced in the future. Thus, under **Friends of Earth**, it is sufficient for standing purposes to plead a presently existing threat of harm that will be experienced in the future.

The Second Amended And Supplemented Complaint alleges that the secondary aluminum processing done by RRA created a large amount of a "waste pollutant commonly referred to as 'salt cake'," which, if not "confined and disposed of properly . . . could cause severe damage to the environment and adjacent properties." (¶3-4.) It further alleges that the Site was "operated in a negligent and reckless manner that was polluting the environment," and that runoff from the Site "invaded adjacent properties, killed vegetation and damaged the property of the City of Stamps." (¶5-6.) Paragraph 67 states that the City's interests are both "specific to the City itself and derivative of its interests in protecting the health, safety and welfare of its citizenry." It lists, among other things, the following specifics:

* protecting the local environment;

* abating a public nuisance;

* protecting aesthetic qualities of local waterways;

* protecting its drinking water supply;

*      protecting its easement across the RRA Site;

*      protecting City-owned property adjacent to the Site; and

*      recouping real estate taxes and franchise fees from residential property which had to be vacated due to pollution.

While there clearly is a dispute as to whether Stamps can prove its several allegations in this regard, it is the Court's view that Stamps has pled sufficient threat of imminent and substantial harm to itself as a municipality to support standing under RCRA.

The Court also believes that Stamps' allegations plead sufficient threat of imminent and substantial harm to its citizens to support organizational standing to bring the RCRA claim:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

**Hunt v. Washington State Apple Advertising Commission**, **432 U.S. 333, 343 (1977)**. *Cf.* **City of Milwaukee v. Saxbe**, **546 F.2d 693 (7th Cir. 1976)**(where municipal corporation seeks to vindicate rights of its residents, there is no reason why general rule on organizational standing should not be followed). Under RCRA, an individual citizen of Stamps would have standing to sue, and Stamps seeks to protect interests germane to its purpose, which is, at

-13-

least in part, to provide for the welfare of its citizens under its police powers.  Because the remedy sought is a clean-up of the site, neither the claim nor the relief requires the participation of individual citizens.

For the foregoing reasons, the Court concludes that the Second Amended And Supplemented Complaint sufficiently pleads an injury which is concrete, particularized, and imminent for purposes of standing.

**(b)** **Has Stamps pled a sufficient causal nexus between the alleged conduct of defendants and the alleged injuries?**

The Second Amended And Supplemental Complaint contends that defendants contributed to the alleged environmental pollution of the RRA Site and surrounding areas by utilizing the services of RRA when they knew or should have known that RRA was not operating the Site in compliance with environmental regulations.  This is a sufficient allegation of causal nexus to support standing.

**(d)** **Is it likely that the alleged injuries will be redressed if Stamps receives a favorable decision in this case?**

The Court finds that it is likely the injury alleged by Stamps would be redressed if it obtains a favorable decision.  Stamps claims the threat of environmental damage, and the remedy it seeks under RCRA is an injunction requiring the defendants to clean up the conditions said to pose that threat.  Compliance with such an injunction would redress the alleged injury.

Because the Second Amended And Supplemented Complaint makes sufficient allegations of injury, causation, and redressability to satisfy the requirements of federal standing doctrine, the Court finds that Stamps has standing to bring its RCRA claim.

**6.   Does Stamps Have Standing To Pursue Its State Law Claims?**

To determine whether a plaintiff has standing to raise a state law case in a United States District Court, the Court must consider not only the Article III factors enumerated in **Lujan** but also the requirements of standing under state law.  **Metropolitan Express Services, Inc. v. City of Kansas City, Missouri**, 23 F.3d 1367 (8th Cir. 1994).

Under Arkansas law, standing is a flexible concept.  "Standing is not a rigid and dogmatic rule, but one to be applied with some view of the realities and practicalities of the situation." **Potter by Redden v. First National Bank**, 292 Ark. 74, 78, 728 S.W.2d 167, 170 (1987)(citation omitted).  The Arkansas Supreme Court has held that "[t]o be a proper plaintiff in an action, one must have an interest which has been adversely affected or rights which have been invaded.  Courts will not allow suit by one who is 'stranger to the record' or for the purpose of vindicating an abstract principle of justice." **City of Dover v. City of Russellville**, 352 Ark. 299, 304, 100 S.W.3d 689, 693 (2003), quoting from **Reynolds v. Guardianship of Sears**, 327 Ark. 770, 940 S.W.2d 483 (1997).

-15-

(a)  **The ASWMA Claim**:

**A.C.A. §8-6-206** provides for a private right of action by "[a]ny person adversely affected" by a violation of the ASWMA. **A.C.A. §8-6-205** makes it illegal to "transport, process, or dispose of solid waste . . . in such a manner or place as to create or be likely to create a public nuisance . . . or to cause or be likely to cause water or air pollution within the meaning of the Arkansas Water and Air Pollution Control Act, §8-4-101 et seq."  As with RCRA, actual pollution is not required, but only the likelihood of pollution, and therefore the standing analysis on the RCRA claim is applicable here as well.  Stamps has an pled an interest in alleviating pollution, which it alleges is threatened by the Site, both on its own behalf and for the weal of its citizens.

Defendants contend that Stamps does not have standing to bring suit on behalf of its citizens under the ASWMA, citing **Shelton v. Hercules, Inc.**, **1999 U.S. Dist. LEXIS 23463 (E.D. Ark. Oct. 8, 1999),** an unpublished opinion, for the proposition that the ASWMA does not contemplate private individuals acting as "private attorneys general." The Court finds **Shelton** inapposite, because there, private individuals were seeking relief, but here, a municipality is seeking relief.  Municipalities have broad police powers to protect the general welfare of their inhabitants, **City of West Helena v. Bockman**, **221 Ark. 677, 256 S.W.2d 40 (1953),** including the power to "cause any nuisance to be abated" within one

mile beyond the city limits, **A.C.A. §14-54-103(1)** (incorporating the jurisdictional limits of **A.C.A. §14-262-102**).  Among the stated purposes of the ASWMA are the regulation of solid waste disposal to prevent water pollution, prevent the creation of nuisances, and enhance the quality of the environment. **A.C.A. §8-6-202.**  The Court finds that these various provisions of the law, taken together, give Stamps standing to bring suit under the ASWMA not just on behalf of itself as an entity, but also on behalf of its citizens.

 (b) **The nuisance claim**:

 Stamps pled, in its Second Amended And Supplemented Complaint, that it seeks to abate a public nuisance caused to its citizens by the Site.  The Arkansas Supreme Court has specifically entertained suit by a municipality to abate a public nuisance based only on the disturbances to its citizens.  **City of Fort Smith v. Bonner**, **194 Ark. 466, 107 S.W.2d 539 (1937).**  Given that standing is a jurisdictional requirement and courts have an obligation to examine the basis for their jurisdiction even when the issue is not raised by the parties, the fact that the Arkansas Supreme Court entertained such a claim is evidence that, under Arkansas law, the municipality had standing to raise it.  The Court, therefore, finds that Stamps has standing to pursue its public nuisance claim.

 (c) **The trespass claim**:

 The Arkansas Supreme Court has cited with approval Blackstone's explanation of the tort of trespass, as follows:

> Every unwarrantable entry on another's soil the law
> entitles a trespass by breaking his close . . . . For
> everyman's land is, in the eye of the law, enclosed and
> set apart from his neighbor's; and that either by a
> visible and material fence, as one field is divided from
> another by a hedge, or by an ideal, invisible boundary,
> existing only in the contemplation of law, as when one
> man's land adjoins to another's in the same field. . . .
> One must have a property (either absolute or temporary)
> in the soil, and actual possession by entry, to be able
> to maintain an action of trespass; or, at least, it is
> requisite that the party have a lease and possession of
> the vesture and herbage of the land.

**Western Union Telegraph Co. v. Bush, 191 Ark. 1085, 89 S.W.2d 723,**

**726 (1935).**

The foregoing makes it clear that in order to maintain an action for trespass, a possessory interest is required. That being the case, to determine appropriate relief would require the participation of the individual landowner (or tenant), and Stamps would not have organizational standing to pursue an action in trespass on behalf of its citizens under **Hunt**. Stamps does, however, have standing to pursue its trespass action as to its easement across the Site and as to the land it owns which adjoins the site to the north.

(d)  **The negligence claim**:

There are actually two types of negligence claims at issue in this case. Stamps alleges that two defendants, Tennessee Aluminum Processors, Inc. ("TA") and L & S Metals and Processing, Inc. ("L&S"), are directly liable for their own negligence during time periods when they allegedly participated in the operation of RRA.

-18-

In addition, all defendants are alleged to be vicariously liable for the conduct of RRA by virtue of their alleged negligence in selecting RRA as an independent contractor to do the secondary processing of their aluminum-containing materials.

As to the first type of negligence claim, the Court finds that, like the trespass claim, determination of appropriate relief will require the participation of the individual landowner (or tenant), and Stamps would not have organizational standing to pursue the action on behalf of its citizens under **Hunt**. Stamps does, however, have standing to pursue the negligence action as to its easement across the Site and the land it owns adjacent to the site to the north, which are proprietary to it.

Because the second type of negligence claim is simply a vehicle by which Stamps seeks to impose vicarious liability on the defendants for the conduct of RRA - and thus individual participation by landowners is not required - the Court finds that it has standing (both on its own behalf, and on behalf of its citizenry) to advance this type of negligence claim.

For the foregoing reasons, the Court finds that the allegations of the Second Amended And Supplemented Complaint are sufficient to give Stamps standing on all issues except organizational standing as to the trespass and direct negligence claims to the extent those claims encompass lands not owned by Stamps. The claims of trespass and direct negligence asserted by Stamps on behalf of its citizens

will, therefore, be dismissed.

7. **Does the Court Have Subject Matter Jurisdiction over Stamps' State Law Claims?**

The defendants contend that Stamps' state law claims should be dismissed for lack of subject matter jurisdiction. This argument hinges on the Court dismissing the RCRA claim for lack of standing, because without the RCRA claim to support federal question jurisdiction, and in the absence of complete diversity (both Stamps and separate defendant Arkansas Aluminum Alloys are citizens of the State of Arkansas) the Court would not have original jurisdiction over this case. *See* **28 U.S.C. §1367**, which provides, in relevant part and with certain exceptions not here applicable,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Because the Court has found that Stamps has standing to assert its RCRA claim, this argument is without merit.

8. **Are Stamps' Claims Barred by the Applicable Statutes of Limitations or by Laches?**

Defendants contend that all of Stamps' claims are barred either by the applicable statutes of limitations or by laches, because Stamps knew of the problems at RRA for some period of years - perhaps as early as 1995 - before filing suit in the Circuit Court

of Miller County, Arkansas, on May 2, 2001, and before adding the RCRA claim on October 19, 2005.

(a)  **The Statutes of Limitations**:

Rather than focus on the length of the applicable statutes of limitations and the date upon which they began to run, Stamps contends for the application of the doctrine expressed in the Latin maxim *nullum tempus occurrit regi*, or "time does not run against the king."  The Arkansas Supreme Court explains the application of the doctrine as follows:

> It has been said that the maxim "*nullum tempus occurrit regi*" is an attribute of sovereignty only, and cannot be invoked by counties or other subdivisions of the state. In many cases, probably a majority, a distinction is drawn between cases where a subordinate political subdivision or agency is seeking to enforce a right in which the public in general has an interest and those where the public has no such interest, and it is held that the statute of limitations, while applicable to the latter character of actions, cannot be interposed as a bar where the municipality is seeking to enforce the former type of action.  In these decisions, the view is taken that the plaintiff, in seeking to enforce a contract right, or some right belonging to it in a proprietary sense, may be defeated by the statute of limitations; *but as to rights belonging to the public and pertaining purely to governmental affairs, and in respect to which the political subdivision represents the public at large or the state, the exemption in favor of the sovereignty applies, and the statute of limitations does not operate as a bar.*

**Arkansas Department of Environmental Quality v. Brighton Corp.**, 352 **Ark. 396, 412, 102 S.W.3d 458, 469 (2003)**(citations omitted; emphasis in original).

The same principle has been held to avoid the bar of the

general statute of limitations contained in **A.C.A. §16-56-115** in a case where the State sought to enforce a statutory right as to which there was no statute of limitations. **Alcorn v. Arkansas State Hospital**, 236 Ark. 665, 367 S.W.2d 737 (1963).

The Court finds that the RCRA, ASWMA, and public nuisance claims are claims where Stamps is seeking to enforce rights belonging to the public, rights pertaining purely to governmental affairs, and rights in respect to which the political subdivision represents the public at large. The Arkansas Supreme Court has specifically held, in **Brighton**, that "the enforcement of environmental regulations intended to improve the environment for the benefit of the public" is a right belonging to the public. Such claims are within the ambit of the maxim "*nullum tempus occurrit regi.*" Likewise, the public nuisance claim is one asserted on behalf of the general public. **Smith v. Bonner**, *supra*. The Court therefore concludes that summary judgment is not appropriate on the basis of defendants' pleaded statute of limitations arguments as to those claims.

However, the Court has already concluded that Stamps lacks standing to assert the trespass claim and the claim of direct negligence by TAP and L&S on the part of the general public, and can only assert those claims on its own behalf. Thus the maxim does not apply to the trespass and direct negligence claims, because Stamps is seeking only to enforce rights belonging to it in a proprietary

-22-

sense.  Those claims carry statutes of limitations of three years, and it is undisputed that Stamps knew of the basis for the claims more than three years before it first filed them.  The Court, therefore, finds that those claims are barred by the applicable statutes of limitation, and they will be dismissed.

   **(b)** **Laches**:

   While no party cites the Court to any authority on the issue, the Court believes it likely that the maxim "*nullum tempus occurrit regi*" would apply to the concept of laches, given that laches is an equitable doctrine "premised upon the same principles that underlie statutes of limitation:  the desire to avoid unfairness that can result from the prosecution of stale claims." **Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc.**, **392 F.3d 265, 276 (8th Cir. 2004)**(citation omitted). The Court need not rest its ruling on this basis, however, because the Court finds that summary judgment on the basis of laches would not be appropriate even without reliance on the ancient maxim.

   Laches requires a showing that "(1) the plaintiff unreasonably and inexcusably delayed filing the lawsuit and (2) prejudice to the defendant resulted from the delay." **Brown-Mitchell v. Kansas City Power & Light Co.**, **267 F.3d 825, 827 (8th Cir. 2001)**.  Defendants contend that laches applies based on the following:

   *    the Second Amended And Supplemented Complaint alleges that operations at RRA commenced in 1987 (¶2); and

-23-

\*       that "anyone who was paying the slightest attention to conditions at [RRA] would immediately recognize that the facility was being operated in a negligent and reckless manner that was polluting the environment." (¶5)

Based on these, and other similar allegations, defendants contend that Stamps unreasonably delayed bringing its RCRA claim, which was not asserted until October, 2005.  They argue that they were prejudiced by this delay, reasoning that if a lawsuit had been brought sooner, they would have ceased using RRA to reprocess their materials, and thus would have lessened any potential liability under RCRA.

The Court is not persuaded that Stamps was unreasonable in delaying its suit while ADEQ was working with RRA to cure its environmental problems, nor in delaying while the EPA remediation was taking place. In fact, suit could not have been brought while the remediation was taking place, see *infra*, ¶9.  The Court finds that Stamps acted reasonably in waiting to bring suit while the environmental agencies were involved, to see if agency action would take care of the problem.

The Court is likewise not persuaded that defendants were unduly prejudiced by Stamps' delay in asserting its RCRA claim. Defendants contend that if suit had been timely filed, they would not have continued to use RRA to reprocess their materials, and thus they are prejudiced by the delay.  They were not so prejudiced at any time

after the EPA remediation was completed, however, because at that point RRA had ceased operations.  Summary judgment on the basis of laches - as to all defendants except Arkansas Aluminum Alloys - will, therefore, be denied.

**(c)** **Laches as to Arkansas Aluminum Alloys**:

Separate defendant Arkansas Aluminum Alloys ("AAA") makes a laches argument peculiar to its own situation, one which gives the Court more pause than the general arguments asserted by all defendants.  AAA was named as a defendant in Stamps' original suit, brought in the Circuit Court of Miller County, Arkansas, on May 2, 2001, which ended in a nonsuit on June 14, 2004.  AAA was not named as a defendant when Stamps refiled its claim in United States District Court on June 2, 2005, because to do so would have destroyed diversity and there was no basis for federal question jurisdiction because the RCRA claim had not yet been added.  It was only after the Complaint was amended to add the RCRA claim (creating federal question jurisdiction), and after the Court denied motions to dismiss the RCRA claim (on April 3, 2006), that the Complaint was again amended (on June 5, 2006) to add AAA as a defendant.  This was less than three months before trial, after all expert witness disclosure deadlines had passed and discovery was about to be concluded.

AAA contends that being brought into the suit at such a late date precludes it from obtaining needed discovery and expert

testimony, and points out that there is no basis to believe that the City came belatedly by knowledge of its claim against AAA.  As an alternative to dismissal, AAA seeks a continuance of the August 28, 2006, trial date to allow it to take discovery and disclose expert witnesses.

The circumstances brought to the Court's attention by AAA persuade the Court that AAA was intentionally omitted from Stamps' earlier filings in federal court purely as a maneuver to ensure federal jurisdiction based on diversity of citizenship.[2]  The Court is further persuaded that it would be prejudicial to AAA to force it to go to trial on such short notice, when the trial preparations it would presumptively have made for the 2004 trial have grown stale and it has not participated in ongoing discovery in the re-filed case.  Finally, the Court takes into consideration that the only way to keep AAA in this lawsuit and avoid prejudice to it would be to delay yet again a case that has been pending for over five years, with the various problems and prejudices that such delay would cause all the other parties.  When these factors are taken into consideration, the Court concludes that AAA's motion to dismiss should be granted.

### 9. **The Doctrine of Primary Jurisdiction**:

Defendants contend that this case is governed by the doctrine

---

[2] Indeed, Stamps admits that AAA was not included in the refiled Complaint in order to have diversity jurisdiction;  it does not, however, explain the delay in bringing its RCRA claim against AAA.

of primary jurisdiction, and that the Court should abstain in favor of either EPA or ADEQ, or both.

The doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." **Alpharma, Inc. v. Pennfield Oil Co.**, **411 F.3d 934, 938 (8th Cir. 2005)** (citations omitted). It is to be "invoked sparingly, as it often results in added expense and delay." *Id.*

The Court does not believe that the doctrine of primary jurisdiction precludes its consideration of the RCRA claim in this case. The circumstances under which agency action limits a citizen's suit under RCRA are set out in **42 U.S.C. §6972(b)(1)(B).** That section provides, in relevant part, as to EPA action:

> [n]o action may be commenced under subsection (a)(1)(B) of this section if the Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment . . . (ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 [or] (iii) has incurred costs to initiate a Remedial Investigation and Feasibility Study under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 and is diligently proceeding with a remedial action under that Act . . . .

> As to action by ADEQ, it provides, in relevant part:

> [n]o action may be commenced under subsection (a)(1)(B) of this section if the State, in order to restrain or

abate acts or conditions which may have contributed or
are contributing to the activities which may present the
alleged endangerment . . . (ii) is actually engaging in
a removal action under section 104 of the Comprehensive
Environmental Response, Compensation and Liability Act of
1980; or (iii) has incurred costs to initiate a Remedial
Investigation and Feasibility Study under section 104 of
the Comprehensive Environmental Response, Compensation
and Liability Act of 1980 and is diligently proceeding
with a remedial action under that Act.

In the case at bar, the condition which Stamps seeks to abate
(salt cake contamination) is not the condition which was addressed
by the EPA remediation (copper contamination).  In addition, the EPA
remediation is complete, and the statute speaks in the present
tense, of private actions being barred by removal or remedial
actions which are presently proceeding.  For these reasons, the
Court finds that RCRA itself does not limit Stamps' right to bring
its claims.

The Court is also not persuaded that either EPA or ADEQ can or
will further involved themselves in the matter.  Stamps complains
that the remediation conducted by EPA did not address the problem
of chloride contamination and, thus, is not adequate to remediate
it.  Moreover, it appears undisputed that EPA did not - and does not
- have authority to address the same.  There is no indication that
ADEQ has any intention to attempt remediation of the chloride
contamination and, in fact, Stamps complains that ADEQ has failed
to repair deterioration in the clay cap because it lacks funds to
do so.  The Court, thus, sees no merit in the notion that it ought
to relegate Stamps' claim to resolution by the EPA or ADEQ.

For these reasons, the Court finds that the doctrine of primary jurisdiction does not require it to abstain from hearing this case. Given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," **Colorado River Water Conservation District v. U.S., 424 U.S. 800, 817 (1976),** the motion for summary judgment on the basis of the doctrine of primary jurisdiction will be denied.

10.  **The Merits of the Claims**:

Defendants contend that Stamps cannot prevail on the merits of its claims for two reasons. First, they argue that Stamps cannot show an "imminent and substantial endangerment to health or the environment" (as required under RCRA); "adverse effect" (as required by ASWMA); or interference with use and enjoyment of land (as required to prove nuisance). Second, they claim that if such injury can be shown, it was not caused by them, but by RRA. The first of these claims is essentially a contention that Stamps is not injured by conditions at the RRA Site. The second is a contention that Stamps is not vicariously liable for the conduct of RRA.

(a)  **Has Stamps come forward with sufficient evidence of injury to survive summary judgment**?

Among other things, Stamps relies on the reports of Thomas Dwight Hinch, an environmental engineer (collectively "the Hinch Report"). Hinch's opinions about the risks posed by the RRA Site may be summarized as follows:

\*      The EPA remediation was a short-term measure dictated by funding limitations related to the fact that the waste materials at the Site were not classified as "hazardous."

\*      The method of remediation was to place the salt cake in what amounted to an unlined landfill with no leachate collection system, even though ADEQ had previously determined that the Site was not appropriate for a landfill, and even though salt cake is typically disposed of in a lined landfill with a leachate collection system.

\*      The existing measures at the Site have not been adequately maintained, and show signs of failure such as reduced vegetation, erosion, and salt residues.

\*      Shallow groundwater "remains heavily contaminated, and there is evidence of continuing migration of salts into the shallow groundwater and of vertical and horizontal migration of the contaminated shallow groundwater."

Hinch stated that it is his opinion, based upon the Environmental Protection Agency's document <u>Guidance on the Use of Section 7003 of RCRA</u>, "that the conditions present at the RRA Site present an imminent and substantial endangerment to the environment."

After giving careful consideration to all the prospective evidence thus far presented - including but not limited to the Hinch Report - and viewing this evidence in the light most favorable

to Stamps, the Court concludes Stamps has shown evidence from which the trier of fact could conclude that there is an "imminent and substantial endangerment to the environment." Summary judgment on the RCRA claim will, therefore, be denied.

The Court further concludes that, since such evidence may also be sufficient to establish an "adverse effect," and interference with use and enjoyment, summary judgment is not appropriate on Stamps' claims under the ASWMA or for public nuisance.

**(b)** **Does Stamps have sufficient evidence of vicarious liability on the part of defendants to survive summary judgment?**

Defendants contend that Stamps cannot prove the element of causation as to any of its claims, because they hired RRA as an independent contractor and are not liable for any negligence on RRA's part in storing the salt cake on its property. The Court has already resolved this issue adversely to defendants in connection with RCRA, in its Order dated April 3, 2006 (document #129) and will not revisit that analysis.

With regard to the state law claims, the issue is one of vicarious liability under Arkansas law, inasmuch as there does not appear to be any dispute that the relationship between RRA and the defendants was one of independent contractor/employer. Defendants rely on the general rule that an employer is not responsible for the negligence of its independent contractor, while Stamps contends for the application of two recognized exceptions to that rule: negligent

hiring of an independent contractor, and utilizing the services of an independent contractor to perform inherently dangerous work. See, e.g., **Stoltze v. Arkansas Valley Electric Co-op. Corp.**, 354 Ark. 601, 127 S.W.3d 466 (2003).

The Hinch Report, if believed by the trier of fact, would support a finding that during the time when defendants were taking materials to RRA, reasonable and prudent companies in their position were aware of the risk of environmental pollution from improper disposal of the by-products of metal reprocessing, and would have conducted an environmental audit of a metal reprocessor before contracting with that entity to handle their dross. This evidence, if believed, could support a finding of liability for negligence in hiring an independent contractor. If defendants - or any of them - are found to have been negligent in hiring RRA to reprocess their dross, such negligence would, in turn, support a finding of vicarious liability for the conduct of RRA on the state law claims.

As to the theory of inherently dangerous activity, the Arkansas Supreme Court has said that

> the law will not allow one who has a piece of work to be done that is necessarily or inherently dangerous to escape liability to persons or property negligently injured in its performance by another to whom he has contracted such work. This is especially true where the agency or means employed to do the work, if not confined and carefully guarded, is liable to invade adjacent property, or the property of others, and destroy or damage it.

**Copeland v. Hollingsworth**, 259 Ark. 603, 605, 535 S.W.2d 815, 816

(1976)(citation omitted).  However, as defendants point out, the necessary element of this theory of vicarious liability is that danger is a natural consequence of the work, even if it is done in a careful manner - not that the work is dangerous when it is done carelessly.  *See, e.g.*, **Stout Lumber Co. v. Reynolds**, **175 Ark. 988, 1 S.W.2d 77, 78 (1928).**

The Court finds no evidence that the work carried out by RRA was inherently dangerous, and therefore finds that summary judgment in favor of defendants on this theory of vicarious liability is appropriate.

### 11.  **The Economic Well-Being Argument**:

Defendants contend that Stamps' claim that it has an "interest in the economic well-being of its citizens and broadening of its tax base" fails to state a claim upon which relief can be granted.  This claim does not appear to be an independent theory of recovery, but rather an assertion of the "interest" of Stamps in the RRA Site. The Court, therefore, declines to address it in the context of summary judgment, believing it is more amenable to treatment as an evidentiary issue if it arises at trial.

### 12.  **Injunctive Relief**:

Defendants contend that Stamps is not entitled to injunctive relief on its state law claims, because it cannot show a threat of irreparable harm which outweighs any injury granting the injunction will inflict on other parties; a likelihood of success on the

merits; and public interest favoring injunctive relief.

Under Arkansas law, "[i]rreparable harm is the touchstone of injunctive relief," and harm "is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law." **United Food and Commercial Workers International Union v. Wal-Mart Stores, Inc.**, **353 Ark. 902, 907, 120 S.W.3d 89, 92 (2003).**

While defendants contend that Stamps cannot show irreparable harm because - they allege - any pollution at the Site has been abated, the Court finds no irreparable harm for a different reason: if money damages will alleviate the alleged harm, injunctive relief is not appropriate. In the Second Amended And Supplemented Complaint, Stamps prays for relief in the alternative: either an injunction requiring the defendants to remediate the Site, or compensatory damages measured by the reasonable cost of such remediation. Given that Stamps has prayed for money damages, and that the citizen suit provision of **§8-6-206** encompasses both monetary and injunctive remedies, **Patton v. TPI Petroleum, Inc.**, **356 F.Supp.2d 921 (E.D. Ark. 2005),** the Court finds that money damages are the appropriate remedy for the state law claims. There is, thus, no basis for injunctive relief on Stamps' state law claims, and summary judgment will be granted as to Stamps' claims for injunctive relief on those claims.

The foregoing analysis does not, of course, impact the RCRA

claim. RCRA specifically provides for injunctive relief. **42 U.S.C.
§6972(a).**

    12. **Stamps' Motion for Summary Judgment:**

The Court will not dwell on Stamps' motion for summary judgment
in its favor on the RCRA and ASWMA claims, other than to point out
that Stamps bears the burden of proof on these claims, and there are
hotly disputed factual issues as to each of them. Summary judgment
in favor of Stamps is, therefore, not appropriate and will be
denied.

    **IT IS THEREFORE ORDERED** that, for the reasons set forth in this
Order, Stamps' claims for trespass, and for the direct negligence of
Tennessee Aluminum Processors, Inc., and L & S Metals And
Processing, Inc., are hereby **dismissed.**

    **IT IS FURTHER ORDERED** that Stamps' claim for injunctive relief
under ASWMA and under the Arkansas common law doctrine of nuisance
are hereby **dismissed.**

    **IT IS FURTHER ORDERED** that, with the foregoing exceptions, the
**Alcoa Defendants' Joint Motion For Summary Judgment** (document #162)
is **denied.**

    **IT IS FURTHER ORDERED** that, with the foregoing exceptions, the
**Joinder Of Defendant Wabash Alloys, L.L.C., In Alcoa Defendants'
Joint Motion For Summary Judgment** (document #165) is **denied.**

    **IT IS FURTHER ORDERED** that, with the foregoing exceptions, the
**Joinder Of Defendant Texas Scrap & Salvage, Inc. d/b/a Delta**

**Aluminum Processors In Alcoa Defendants' Joint Motion For Summary Judgment** (document #166) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Commercial Alloys Corporation In The Motion For Summary Judgment Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #167) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Defendant Omnisource Corporation In Alcoa Defendants' Joint Motion For Summary Judgment** (document #168) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Defendants Tennessee Aluminum Processors, Inc. And L&S Metals And Processing, Inc. In Alcoa Defendants' Joint Motion For Summary Judgment** (document #169) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Newco, Inc., In The Motion For Summary Judgment Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #171) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Service Aluminum Corporation In The Motion For Summary Judgment Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #174) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Defendant Atlantic Coast Recycling, Inc. In Alcoa**

**Defendants' Joint Motion For Summary Judgment** (document #175) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, **Shapiro Sales Company's Motion For Summary Judgment** (document #177) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, **Metal Exchange Corporation's Motion For Summary Judgment And Joinder In The Motions For Summary Judgment Filed By The Alcoa Defendants And Arkansas Aluminum Alloys** (document #181) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, **Metal Exchange Corporation's Joinder In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #183) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Commercial Metals Company In The Motion For Summary Judgment Filed By Alcoa, Inc., Alumax, Inc., Alumax Aluminum Corporation And Reynolds Metals Company** (document #190) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Service Aluminum Corporation In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #191) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Commercial Metals Company In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #193) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the

**Joinder Of Commercial Alloys Corporation In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #194) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Tennessee Aluminum Processors, Inc. And L&S Metals And Processing, Inc. In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #195) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Newco, Inc., In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #196) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Defendant Omnisource Corporation In Shapiro Sales Company's Joint Motion For Summary Judgment** (document #197) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Texas Scrap & Salvage, Inc., In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #198) is **denied.**

**IT IS FURTHER ORDERED** that, with the foregoing exceptions, the **Joinder Of Defendant Atlantic Coast Recycling, Inc. In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #204) is **denied.**

**IT IS FURTHER ORDERED** that the **Separate Defendant Arkansas Aluminum Alloys' Motion To Dismiss Plaintiff's Second Amended And Supplemented Complaint, Or In The Alternative, Motion For Summary**

**Judgment, And Joinder Of Arkansas Aluminum Alloys In Alcoa Defendants' Joint Motion For Summary Judgment** (document #172) is **granted,** and plaintiff's claims against Arkansas Aluminum Alloys are hereby **dismissed with prejudice.**

**IT IS FURTHER ORDERED** that the **Joinder Of Arkansas Aluminum Alloys In The Motion For Summary Judgment Filed By Shapiro Sales Company** (document #192) is **denied as moot.**

**IT IS FURTHER ORDERED** that **Plaintiff City Of Stamps' Motion For Partial Summary Judgment** (document #184) is **denied.**

**IT IS SO ORDERED,** this 4th day of August, 2006.


    /s/ Jimm Larry Hendren
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**